Good morning. I'm Lamar Peckham for Petitioner William de Jesus Melendez. Your Honor, first thing I want to do is make a concession, and that is that we did not file a petition seeking review of the motion for reconsideration. That's true. However, I think this Court, in any event, has the authority to consider that, to consider the arguments that were in that, included in that motion. I think under the case, one case that the government cited, International Union of Bricklayers, that the Court has discretion in certain cases to consider improperly presented claims of error where the appellee is not misled and the issue has been fully explored. And I say that in this case, it seems to me that either the Court needs to consider the opinion that the Board of Immigration Appeals issued in denying the motion for reconsideration, or it doesn't have any analysis by the Board of Immigration Appeals to review. Because in the Board's denial of the motion to remand, to consider the effect of the expungement of a controlled substance of offense, and at the same time dismissing the appeal, they really didn't say why they were disagreeing with the argument made by the Respondent in that case. So there really isn't anything to review if this Court doesn't look at the Board's decision in the motion for reconsideration. So if, it seems to me, if this Court decides that it can't consider the Board's opinion on the denial of the motion to reconsider, probably what it would need to do is remand this, the Board of Immigration Appeals under Ventura, for them to actually analyze and give an opinion about why they're denying the remand. With that, Your Honor, I think also that it seems to me, anyway, that this is an issue of... Let me make sure I understand what you're saying, then. Are you saying that since the second motion that was made brought in the 1996 issue, the issue pertaining to the diversion program in 1996, and there was some discussion on the part of the Board regarding the effect of that and whether or not the second conviction was a first conviction or a second conviction, that absent that there's nothing to talk about? Is that what you're saying? I think there's plenty to talk about, but I think there isn't anything much in the Board of Immigration Appeals' decision to talk about. They didn't analyze it. They just referred, it was a summary affirmance, so they were referring to the immigration judge's decision. And in the course of giving his decision, he said, well, I don't have an expungement before me so that I can consider what effects that might have in this case. That's part of his, at least his colloquy in offering or making his opinion. And the motion to remand was to consider exactly that, what effect an expungement had. It seems to me that there really isn't any analysis of the dismissal of the appeal, which also was included in the Board's decision on denying the remand. I mean, there isn't anything to ‑‑ I certainly would like the court to consider my argument that I made in my brief that because the first charge, controlled substance charge, never required my client to admit his guilt or for there to be any finding of guilt, of course I would like the court to consider that and consider whether dismissal of that case after successful diversion, you know, whether that disqualifies a person for the Federal First Offender Act treatment in federal court. Because the first ‑‑ Well, let's assume, okay, let's assume for purposes of discussion then that the 1996 diversion, which is under the old California statute, that statute was amended and the procedure is different now. But under the old statute there was no plea and there was no conviction. So let's assume for purposes of discussion that it doesn't count. So we're at the first go‑around in 1999. Still, don't we have the problem, don't you have the problem, that a 1203.4 expungement leaves in place such significant collateral consequences to any conviction that it's not the same as an FFOA expungement and should not be treated as an FFOA expungement and that your client stands convicted for immigration purposes? Well, there are collateral consequences. Registration, I'm sure the court has that in mind. I have a number of consequences in mind, including that it can be used in future proceedings, which is an enormous collateral consequence. It is. However, I think that in any event, that is ‑‑ in any event, I think that it is equivalent, at least significantly equivalent to expungement under the Federal First Offender Act.  I mean, the FFOA essentially says once you've been through this program, once you are in a position where the FFOA procedure has been applied, there are no collateral consequences. It truly is as if you were never convicted. Whereas under 1203.4, you can't say that. So for equal protection purposes, equal protection analysis, that's where we have to look. We have to say where does the petitioner stand after the application of the expungement statute? Because expungement, as Judge Ferguson mentions in the Ramirez-Castro concurrence, expungement means a lot of different things. It is not a well‑defined term. So we have to look at what the consequences are. And if we do that and say are they similarly situated, one who has gone through 1203.4 is not similarly situated to one who has been through the FFOA. Well, then I would say that there is no California diversionary program that would allow one to be considered to be eligible for the first offender. I think you're right. I think that's correct. So then every case in which it has been found that California has some equivalent to the FFOA is wrong. Well, I don't know that there's any case that has squarely said that California is the equivalent. Certainly, Lujan doesn't really say that. Lujan is a case that focuses on the question of whether or not 1996 amendments to the INA had the functional effect of repealing the FFOA itself for purposes of the immigration laws and ultimately concluded no. But that doesn't mean that the California statute does. I want to make just one point about the FFOA. There is a consequence that does not disappear with expungement, and that is that you are no longer eligible for treatment under the FFOA. So there is a consequence that continues on indefinitely. That's true. That's the only one I can think of, but there is one. You don't do it two times. Right. Only once. Thank you. If I could reserve my time. All right. Thank you. We'll hear from Alberto Gonzalez. He's been doing a lot of talking lately. You may go ahead, counsel. If the Court please. We made two presentations here. The first is I agree with counsel. There is nothing before the Court to review. And for that reason, the petition should be dismissed. I'm sorry. I can't hear you. I'm sorry. This is the first time I have ever argued to a television set. Me too. It is unusual to me. Pull the microphone down just a little bit. Ah, okay. There you go. Is this better now? Yes. It's the microphone that's the problem. Ah. I agree with counsel that there is nothing before the Court to review, and therefore the petition should be dismissed. Because the petition for review was to review the denial of the affirmance of the immigration judge and the remand.  So it consists of the detailed arguments against the remand. But in his brief, he raises he cites, he gives three questions, and then makes no argument in support of those questions. Now, it is well established in this Court that its review is limited to the board's decision and the basis is for the board's decision. And the reconsideration was not before the board when the petition for review was filed. It is also established that to bring the denial of, the denial of reconsideration was a second order, and as Stone makes clear, it was therefore necessary to bring a petition to review that denial. There were, for that reason, the Court cannot review the denial of reconsideration because there's no petition for review and there's no argument on any other subject before the Court. Now, assuming that, nevertheless, the denial of reconsideration were before the Court, it was quite correct. Basically, these, now all of a sudden I've lost the word. The expungement statutes take three forms. You get expungement before a plea, after charges are brought but before a plea, which was what you had in 96. You have expungement after a trial or a, after a conviction on a trial or a conviction on a guilty plea, but before a judgment of guilty is entered. And that is what the Federal statute contemplates. Or you have expungement after a judgment is entered, which this is probably the true expungement statute because what it does is it expunges the judgment. Now, this Court has made clear in Luon, this Court has made clear in Luon that it will look to the purposes of the statute but not the technicalities. In fact, the whole point was that. Don't you mean it will look to the consequences of the statute and not to the procedural device? Yes. And I don't know why, but suddenly I'm losing it here. Well, but counsel, look, let's look at the 1996. If we look at the 1996 event, let's call it an event, it was an encounter with law enforcement. It did not require a guilty plea. It did not require a, there was no conviction. There was no plea. The old California procedure, with which I have some degree of familiarity, never involved a judgment of any sort at any time. Isn't that different than a vocateur situation where something, where you do a diversion, judgment's entered, you go through diversion program and then it's withdrawn, or a conviction where you go full and judgment is entered and then judgment is vacated or expunged in some sense, some limited sense as under 1203.4. Don't you see the old California diversion statute as being different in a material way? It's different, yes. But also the statute. So different that there never ever, ever was a conviction. I agree that there was no conviction. But as Luan explains, the alien is entitled to having his conviction considered to be a nullity, only if he would have been so entitled had he been brought into federal court. What you just said presumes the existence of a conviction. You said he's entitled to have his conviction considered a nullity. And what I'm saying is the old California procedure never got that far. There was never a conviction. There was never a judgment entered. It was a, everything happened before the entry of judgment. And so judgment would never be entered precisely because the statute allowed for the diversion pre-plea and pre-entry of judgment. That was the form that it took. The substance was that the person who was charged was offered a way to not eventually have a conviction on his record. This was the first way of doing it. But under the federal, nevertheless, it was a form of, let's call it an avoidance, a form of avoidance, which is what the federal statute is. And the federal statute, it's a way of avoiding the effect or the consequence of having a conviction on your record and going to jail for that matter, too. And it just seems to me that one is never being convicted and the other is not having to deal with the consequences of having been convicted. And I think that may be different. You're saying it's form over substance. I am, Your Honor. And I'm saying, furthermore, that what the federal statute says, having had, let me forget the exact language of the federal statute, which might be helpful here. Well, I have it here. Has not previously been the subject of a disposition under this section. Now, if you're going to translate that to a state statute, it has to be previously been the subject of a disposition under whatever type of statute the state has. Now, Luan also says that the individual had to have been entitled to having his last, the one we're talking about now, the 99 conviction, having been entitled to have that one treated as not a conviction. And if he had, and since had he in 96, had he in 96 and 99 both times been in federal court, the only way that was available to him would be under the federal statute, under the FOA statute, and as a result, he would have had a prior disposition in that fashion. Well, what happened in Luan? What factual scenario, procedural situation were they dealing with in Luan? To the best of my recollection, Your Honor, in Luan was the third situation. It was a situation in which the alien was, went through the whole works, including having a judgment of conviction entered, and then that was expunged. Pursuant to an Arizona statute that's very similar to 1203.4. So that was expunged. Yes, that was expunged. And what the courts, and what Luan said was the argument that had been made by the government that since this is different than the federal statute because this is a post-judgment statute, therefore, it's not the equivalent, and therefore, the conviction was not expunged for immigration purposes. And the court said in Luan, no, we don't look at these technicalities. What we look at is what did the alien do and how did the courts treat it? Well, isn't what's going on here very similar to Luan in terms of the Federal First Defender Act? It would be, but the problem is, you see, that under the Federal First Defender Act, if you had an ameliorative action before, you can't get it. You don't get a second bite of the apple. And when you say before, which one are you referring to? 96. 96. In other words, the 96 one does not have to be technically the same. That's what Luan is saying. It was, nevertheless, a procedure that allowed somebody who was charged to avoid being convicted, avoid having a conviction on his record, and avoid serving any sentence. Now, I don't know why California changed it. Maybe they found that this was not working out well. But it still, this was one of the three forms. And the essence, it seems to me, of almost every one of these expungement statutes is you get one bite of the apple. If you're wrong on the 96, then the other side wins if we get there. If you get there. Oh, God. I think I would have. Well, other than the point that was raised by Your Honor, which, to be honest about, I had not thought of, because I was fairly convinced on the board. Well, actually, no. You would then, I think what you would have to do was send it back to the board to say, well, okay, is this enough of an equivalent? I'm sorry, but I did not get the names of Your Honors, so I can't. But the judge. That's okay. We're all fungible, except for the chief judge. The judge on the right. I think under Orlando Ventura, you would have to send it back to have the board consider that.  We'll allow the other side to respond. Thank you. As to the inadequacy of whether the brief and the petition actually put into issue the motion to remand or whether it was only putting the issue of the motion for reconsideration at issue, Your Honor, I would say this, that the only thing missing from the brief is stating the standard of review on a motion for remand, a review of a motion to remand. That's the only thing missing. The reason I argued to the motion for reconsideration is because that's the only intelligible thing that the Board of Immigration Appeals said about their decision in denying the motion to remand. It's the first time I've heard somebody in your position argue that they ever did anything intelligible, but go ahead. Thank you. As far as the former diversion statute in California being a form of avoidance, it was a form of avoidance. It allowed both people who are guilty and people who weren't guilty to avoid going through a trial. If a defense attorney would tell his client, if his client said, I absolutely am not guilty of this, I was just in the car with this guy, it was his drugs, and now I'm charged with possession. Don't run the risk, take pretrial diversion. You've got nothing to lose by taking pretrial diversion. That would be very good advice. And, therefore, every person who took PC-1000 prior to 1997, it doesn't mean they were guilty. There's no inference that should be drawn from the fact that they took a diversion. And the FFOA says specifically that you have to have been not accorded treatment under this subsection, which required a conviction or at least an admission of guilt. And if you're right, then how does it work under Lujan? If we ignore the 96, then does Lujan get you where you want to go? I believe it does. I believe that this is a diversion statute, very much like the one in Arizona that Lujan Amendoriz was looking at, and that it's equivalent. There's never going to be a perfect fit between State statute. Well, there may be, but there doesn't have to be. And I think Lujan Amendoriz says there doesn't have to be a perfect fit. There can be a substantial fit, which is what it is in this case. What about what Judge Ferguson said in the Ramirez-Castro concurrence about 1203.4 and about the importance of assessing precisely what the expungement statute does and using that as the test as to whether or not one stands convicted under the Immigration Act? All I can say is I'm glad that was the concurrence opinion and not the majority opinion. It agrees with the judgment, and it certainly just discusses it. And, Castro, well, then let's talk about Castro-Perez, which says we don't talk about what theoretically or hypothetically might have been done, what eligibility might have been. The question is what, in fact, happened before we assess whether one's status is the same or similar to another. Well, I think that what happened, regardless of how the statute was applied thereafter, what happened was the same, that he was he had to plead guilty or admit guilt to a criminal, a controlled substance. No, but I'm talking about after the application of the expungement statute because that's the relevant point in time that we assess, is it not? Yes. And if that's the case, then we would have to say that one who has been through 1203.4 has a lot more baggage than one who's been through FFOA, don't we? Or through PC-1000, as it is known. Or through PC-1000. Agreed. And exactly what are you asking us to do, then? What I'm asking you to do is one of two things, either to consider my argument and determine that this conviction was treated as a FFOA conviction or remand it to the Board of Immigration Appeals under Ventura to see, for them to develop their analysis. One or the other. All right. Thank you, counsel. This case is ordered and submitted. And we are in recess for the week. Thank you.
judges: Schroeder, Trott, Feess